**In re CAJUN ELECTRIC POWER COOPERATIVE, INC., Debtor.**

No. 94–11474.
USDC No. 94–CV–2763.

United States District Court, M.D. Louisiana.

Aug. 7, 1995.

John C. Weitnauer, William H. Patrick, Alston & Bird, Atlanta, GA, for debtor.

Ralph R. Mabey, Trustee, LeBoeuf, Lamb, Green & McRae, L.L.P., Salt Lake City, UT.

*RULING ON MOTIONS FOR*
*APPOINTMENT OF*
*TRUSTEE*

POLOZOLA, District Judge.

Motions have been filed by the United States, on behalf of the Rural Utilities Ser-

vice ("RUS"), Central Louisiana Electric Company, Inc. ("CLECO") and Teche Electric Cooperative, Inc. ("TECHE"), requesting the Court to appoint a trustee pursuant to section 1104 of the Bankruptcy Code, 11 U.S.C. § 1104. Gulf States Utilities ("GSU") has filed a response in support of the motions. Cajun Electric Power Cooperative, Inc., ("Cajun") and other parties to the bankruptcy proceeding have filed oppositions.

After conducting oral argument on the motions, the Court took the matter under advisement. On August 1, 1995, the Court issued a brief ruling granting the motions to appoint the trustee. The Court now assigns written reasons for its decision.

## I. FACTUAL BACKGROUND [1]

Cajun filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Louisiana on December 21, 1994. Because of pending litigation involving Cajun and GSU,[2] this Court has presided in the bankruptcy case.

Cajun is a non-profit electric generating and transmission cooperative that is wholly owned by twelve non-profit retail electric distribution cooperatives. These electric distribution cooperatives are owned by their members, who are also consumers. Each of the electric distribution cooperatives have two representatives on Cajun's Board of Directors.

Relying on section 1104(a)(1) and (2), movers contend that a trustee should be appointed for cause and because it would be in the best interest of the creditors and the estate. The Court agrees.

## II. DISCUSSION

Under Chapter 11 of the Bankruptcy Code, a debtor-in-possession can remain in control of the business operations and retain management unless a party in interest can prove that the appointment of a trustee is warranted. Absent a need for the appointment of a trustee, there is a strong presumption that the debtor should be permitted to remain in possession. The party requesting the appointment of a trustee has the burden of proof to show either cause under section 1104(a)(1) or that it is in the interest of the creditors, equity security holders, and other interest of the estate under paragraph (a)(2).

 A debtor-in-possession has all of the duties of a trustee in a Chapter 11 case, including the duty to protect and conserve property in its possession for the benefit of the creditors. A debtor-in-possession's fiduciary obligation to its creditors includes refraining from acting in a manner which could damage the estate or hinder a successful reorganization of the business. When a debtor-in-possession cannot perform these duties, a Chapter 11 trustee should be appointed.

 Cause exists under section 1104(a)(1) when the debtor engages in conduct such as fraud, dishonesty, incompetence, gross mismanagement, or similar cause. It is clear that the grounds for cause are not limited to those enumerated in section 1104(a)(1). Cause can consist of other factors, including an actual conflict of interest. If the Court determines that cause exists under section 1104(a)(1), the Court shall order the appointment of a trustee.

 Even if there is no cause, a Court may appoint a trustee under section 1104(a)(2) if it is in the best interest of creditors or of the estate. Under this section, there is a flexible standard for the Court to follow. In determining whether to appoint a trustee under section 1104(a)(2) the Court may consider: (1) the trustworthiness of the debtor; (2) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management;

---

1. The Court has recently written an opinion in this case which sets forth factual background in more detail. *Cajun Elec. Power Co-op., Inc. v. Louisiana Pub. Serv. Comm'n (In re Cajun Elec. Power Co-op.)*, No. 94–CV–2764 (M.D.La. July 20, 1995).

2. *Cajun Elec. Power Co-op. v. Gulf States Utils.*, C.A. No. 89–474. The Court has recently completed Phase I of this trial and now has the matter under advisement.

and (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.

■ The Court may appoint a trustee at any time after the commencement of the case provided it is done before the confirmation of a plan.

■ While the Court believes the burden is on the movant to prove the need for the appointment of a trustee by clear and convincing evidence,[3] the Court believes the evidence in this case satisfies this standard. It is clear from the facts of this case that there is cause to appoint a trustee because of the actual conflict Cajun has in this case between Cajun and its members, Cajun and the estate, and Cajun and its creditors. In short, the many conflicts of interest that Cajun's management, directors and members have with each other and with their creditors and the estate mandates that there be a trustee appointed to operate the estate in a fair and impartial manner. This is particularly true under the facts of this case where millions of consumers will be affected by the debtor's actions or inactions. Furthermore, because Cajun owes the RUS in excess of $4 billion, the taxpayers of the United States have a right to have the debtor's estate managed in such a way that as much of the debt as possible can be paid rather than just written off. It is not necessary that the estate be guilty of fraud or dishonesty for the Court to find cause under section 1104(a)(1).

The actual conflicts in this case are numerous. The potential for more conflicts in the future is inevitable under the facts of this case. The memorandums filed by RUS, TECHE, and CLECO spell out these conflicts in detail. Some will be summarized here.

There is a strong dispute between some individual members of the debtor over whether there should be an appeal of the decision of the Louisiana Public Service Commission which ordered Cajun and its members to reduce their rates. Some members of the board even resigned because they recognized the conflict. Different positions have been taken by some members on the appeal. Some want the board's decision to be reversed to lower the rates even more, while some want the commission's decision to lower rates to be reversed. There is little doubt that the lower the rates charged, the less revenue there will be to pay the outstanding debt in this case. Furthermore, any rate increase which Cajun might seek is adverse to its members. The Court does not believe that it should delay the appointment of a trustee to allow Cajun's management, directors and members to resolve their individual disputes at the expense of the creditors and the debtor's estate. Under the facts of this case, it is impossible for the debtor-in-possession to act as a fiduciary for the estate at the same time as it acts as a fiduciary for its members and customers. And, as noted earlier, because of the number of consumers involved and the potential loss to the taxpayers of this country, it is important that a neutral person oversee the debtor-in-possession to avoid any appearance of impropriety in this case.

There are other examples of conflicts: failure to collect moneys owed by the member cooperatives; failure to allow some members access to information about and to participate in possible sales of the debtor's assets; the manner in which the All–Requirements Contracts between Cajun and its members operate, which causes conflicts of interest between the officers and directors of Cajun, the interlocking directors and officers, and the member cooperatives; Cajun's failure to take a position on the preemption issue which was recently decided by the Court; the interest of some members in the purchase of all or part of the debtor's estate, and their apparent desire to be able to purchase the property at the lowest price possible; the conflict which may arise because of the members' interest in purchasing part of the estate in determining whether to accept or reject other offers which may be made; and the apparent primary interest of the Cajun board in protecting the rates and the actual exis-

---

**3.** *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir.1989); *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr.N.D.Ill.1994).

tence of its members rather than trying to maximize the value of the debtor's estate. In short, the Court finds that the debtor-in-possession is impaired in its ability to reorganize itself because of the actual conflicts it has.

Decisions rendered by two courts in similar suits support the Court's decision in this case. In *Wabash Valley Power Ass'n v. Rural Electrification Administration,*[4] the Seventh Circuit in a case involving electric cooperatives noted:[5]

> [Cajun] is operating as a debtor-in-possession. A debtor in bankruptcy is supposed to maximize the value of the estate, which opposition to a rate increase does not. Th[ese two] suit[s by these four RECs and the motion to dismiss Cajun's appeal for a rate increase] serv[e] the interest of [Cajun]'s members at the expense of the interest of [Cajun]'s creditors.... [Cajun should not be] allowed to operate as debtor-in-possession, when the clash of interests between creditors and its current management is so obvious.[6]

In *In re Colorado–Ute Electric Association, Inc.,*[7] the court found that the inherent conflict of interest between the debtor, its members and creditors necessitates the appointment of a trustee.

■ For the same reasons set forth above, the Court finds that it is in the interest of Cajun's creditors and estate that a trustee be appointed under section 1104(a)(2). The Court believes that it is absolutely necessary under the facts of this case that a neutral trustee be appointed to preside in an objec-

tive and impartial manner to bring this case to a swift and successful conclusion. As the court noted in *Colorado–Ute,* "serious conflicts ... between and among the debtor, its board and creditors [made] the prospect for gridlock seem more probable than the ability to rehabilitate the debtor." [8] Such is the case now before the Court. There are millions of consumers and even more taxpayers who are directly affected by the outcome in this case. There is no further need for confusion, uncertainty or delay in this case. A trustee will able to ensure that a fair plan of reorganization will be submitted to the Court, serve as a liaison with the many regulatory agencies that are involved, objectively review the proposed sale of assets, and participate in settlement discussions in those cases in which Cajun is a party.[9] In short, the appointment of a trustee will serve the interest of the creditors, the equity interest holders, and the estate.

The Court finds that the following arguments made by Cajun and the other parties which oppose the appointment of a trustee have no basis in fact or law:

(1) A trustee cannot assume and assign the All–Requirements Contracts;[10]

(2) Cajun "could" incur tax liabilities if a trustee is appointed because it is possible that the appointment of a trustee will result in a loss of cooperative status for federal and state tax purposes and in a change of ownership for federal tax purposes;

(3) The cost of the trustee outweighs any benefit that the estate will receive;[11]

4. 903 F.2d 445 (7th Cir.1990).

5. This Court is substituting Cajun for Wabash in the Seventh Circuit's opinion.

6. *Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 903 F.2d at 451.

7. 120 B.R. 164 (D.Colo.1990).

8. *Colorado–Ute,* 120 B.R. at 176.

9. This Court has recently taken under advisement phase I of the litigation between GSU and Cajun involving the River Bend Nuclear Plant. Depending on the Court's decision, there will be a need for further litigation in this case. This

case is very complex and has been very costly to the parties.

10. It is clear that Cajun's obligations under these contracts do not require a special skill or qualification, nor does these contracts impose a strictly personal obligation on Cajun. In fact, Cajun's members receive much of their power directly from CLECO, GSU, and others under interconnection agreements.

11. The Court realizes that the appointment of a trustee will require the expenditure of funds. However, the Court believes that the appointment of a trustee will allow this case to be brought to a speedy resolution, while at the same time protect all of the parties involved. This Court intends to closely monitor the costs and fees incurred by the trustee in this case. If

(4) The election procedures for a trustee will involve more litigation.[12]

If ever there was a need for a trustee in a Chapter 11 case, this is one. The Court recognizes the impact the appointment of a trustee has in a bankruptcy case. However, in this case, there is not only cause to appoint a trustee, it is also in the best interest of the creditors, the equity interest holders and the estate. The appointment of a trustee will also give confidence to the millions of consumers and taxpayers who are directly and indirectly affected by this bankruptcy case.

The United States Trustee shall submit a trustee to the Court for approval in accordance with law.

necessary, the Court intends to reduce the amount of fees and cost where the facts warrant. In the final analysis, there will be no fair resolution of this case without the assistance of a trustee.

12. The parties have agreed on a trustee after being ordered by the Court to meet with the United States Trustee. A motion to appoint a trustee agreed to by the parties is pending before the Court.